## Cleveland, C., C. & St. L. Ry. Co. v. Mary Hibsman, Adm'x, etc.

1. RAILROADS—*Who Is a Trespasser.*—A person using the rails of a railroad company for his own convenience to fashion a piece of wire into a "chicken hook," is a trespasser upon the right of way of the company.

2. SAME—*A Person While upon a Street Crossing, but Using the Company's Rail for His Own Convenience.*—The mere fact that a person is partly upon a street crossing, while using the company's rail for his own convenience, does not render him any the less a trespasser, for the crossing is only authorized to be used by the public for highway purposes.

3. SAME—*No Duty to Keep a Lookout for Trespassers.*—The employes of a railroad company are under no obligation to keep a lookout for trespassers upon the right of way and are not guilty of willful or wanton negligence as against such trespassers for failing to do so.

Trespass on the Case.—Death from alleged negligence. Appeal from the Circuit Court of Edgar County; the Hon. FRANK K. DUNN, Judge, presiding. Heard in this court at the May term, 1901. Reversed with a finding of facts. Opinion filed December 10, 1901.

GEO. F. McNULTY, attorney for appellant; C. S. CONGER and R. L. McKINLAY, of counsel.

H. S. TANNER and DUNDAS & O'HAIR, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

This is an appeal to this court by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company to obtain the reversal of a judgment rendered against it by the Circuit Court of Edgar County in favor of Mary Hibsman, as administratrix of the estate of her deceased husband, Henry

Hibsman, for $1,000 damages, which had been rendered on the verdict of a jury, in an action on the case in which she alleged in her declaration, such damages and more, had been occasioned to her and his six surviving children on account of his death having been caused by the willful and wanton negligence of the servants of defendant in managing defendant's freight train in their charge, so that it struck, ran over, and killed him.

The record shows that defendant moved the trial court for a new trial on the grounds, among others, that the verdict was contrary to the evidence, and that the court improperly refused to give the jury the written instruction to find for defendant, which its counsel requested at the close of plaintiff's evidence, and again at the close of all the evidence, but which was overruled, and defendant preserved an exception.

The facts in this case, as shown by the evidence in the bill of exceptions, are that Henry Hibsman was employed in a poultry house which abuts on the north side of defendant's right of way in the village of Kansas, in Edgar county, Illinois, near to where four of its tracks, running east and west, cross Second street, which runs north and south. Third street in said village, runs parallel with Second street, and is about two hundred feet west of it.

South of the poultry house a short distance is a switch track; south of that ten feet, nine inches, is the main track; south of it, seven feet, nine inches, is a passing track; and south of that fourteen feet and seven inches, is a switch track. On the afternoon of the day upon which Henry Hibsman was killed, he was at work in the poultry house, and desiring to use a " chicken hook " and being unable to find one, he picked up a piece of wire and a hatchet and went out of the south door onto defendant's right of way, walked south over the north switch track and to the north rail of the passing track, kneeled down onto a protruding railroad tie at a point where a part of his body was onto Second street crossing and the other part on the private right of way, and using the rail for an anvil, undertook to

make a "chicken hook" out of the piece of wire with the hatchet.

The local freight train of defendant, consisting of twelve cars and an engine, which was bound westward as soon as the west bound fast limited passenger train of defendant, then about due, had passed on the main track, was occupying the passing track, but was cut into three sections so as to leave the crossings at Second and Third streets open, the engine and some of the cars constituting the west section, being west of the crossing on Third street; the middle section being between the crossing on Third street and the crossing on Second street; and the east section being east of the crossing on Second street.

The east end of the east car of the middle section stood about six or seven feet west of where Henry Hibsman was making the "chicken hook." The rear brakeman of the freight train was stationed on the crossing on Second street, about forty or fifty feet south of him, for the purpose of warning persons desiring to pass over it of the passenger train then due and which soon passed. This brakeman observed Henry Hibsman when he was in the act of kneeling, but his attention just then being called to the approaching passenger train, he did not notice what Hibsman was doing after that. While the passenger train was running past, the conductor of the freight train, having received a signal from the forward brakeman of his train that the crossing on Third street was clear, gave the engineer a signal to couple up the freight train, which he at once proceeded to do by backing the west section up against the middle section at the rate of about two miles an hour, which caused the east end of the middle section to strike, run over and kill Hibsman who was still making his "chicken hook," notwithstanding he was warned by a boy who stood near him that the passenger train was coming, and to look out because the freight train was being coupled up. The rear brakeman of the freight train could not see Hibsman while the passenger train was passing between them, and supposed he had moved away out of danger; but as soon as the

passenger train had gone past the crossing, he saw Hibsman was being run over, and at once gave the engineer of the freight train the emergency signal, and the train was stopped as soon as possible, but the east car of the middle section had run over Hibsman and so badly injured him that he died a short time thereafter. When the stop was made, the east end of the middle section stood about in the middle of Second street crossing, having moved about thirty-five or thirty-six feet from where it had stood when Hibsman commenced making the "chicken hook." The rear brakeman was the only one of those in charge of the freight train who saw or knew Hibsman was where he was when killed. There was a conflict in the evidence as to whether the bell was rung before the engine started to back up, or that it was ringing while the engine was backing.

In support of the judgment, counsel for appellee, while conceding that the deceased was not in the exercise of ordinary care in being where he was when killed, yet they earnestly contend that the conductor and engineer were guilty of wanton and willful negligence in backing the front section against the middle section before the rear brakeman had given a signal that the crossing on Second street was clear, and that the weight of evidence shows that the bell was not rung as required by statute before the engine started to back up; while counsel for appellant insist that the deceased was clearly a trespasser from the time he entered appellant's right of way from the south door of the poultry house until he was killed, because he was not there for the purpose of business connected with the railway company, but for his own private convenience, to use the track as an anvil in making a "chicken hook," and that it matters not whether he was on appellant's private right of way or where it is crossed by Second street, as he was not there for the purpose of using the crossing as a highway, but was actually using it for his own private purposes, and therefore assumed all the danger incident to the use of the track by the railway company that is usual at any other place on its right of way; and that being a trespasser, appellant owed

him no duty except that its servants, in managing its train, should not willfully or wantonly injure him.

And they further insist, that because the conductor and engineer did not know that the deceased was at the place where he was killed, that they were not guilty of willful or wanton negligence in causing the engine to back up to couple the train without a signal from the rear brakeman, or by starting to back up the first section before ringing the bell as required by statute, because those duties are required for the protection of persons using the crossing as a highway, and not for trespassers.

Because the deceased was using the rail of appellant's track for his own convenience to fashion a piece of wire into a "chicken hook," we have no hesitancy in concluding that he was a trespasser; for the right of way was the property of the railway company, upon which no unauthorized person had a right to be for any purpose. Illinois Central R. R. Co. v. O'Connor, 189 Ill. 559; Wabash R. R. Co. v. Jones, 163 Ill. 167; Blanchard v. Lake Shore and Michigan Southern Ry. Co., 126 Ill. 416; and Robards v. Wabash Ry. Co., 84 Ill. App. 477.

The mere fact that he was partly upon the street crossing while so using the rail, does not render him any the less a trespasser, for such crossing is only authorized to be used by the public for highway purposes, and the evidence is conclusive that he was not using it for any purpose other than his own convenience.

The deceased being a trespasser, neither the conductor nor the engineer had to anticipate that he was upon the right of way, and the evidence shows that neither of them did know that he was there before he was struck, so that they were not guilty of willful or wanton negligence as against him when they caused the engine to back up the east section of the train at the rate of two miles an hour, to couple it onto the middle section, without first ringing the bell and obtaining a signal from the rear brakeman that the crossing over Second street was clear; both of those precautions were intended to be taken for the protection of the

public in using the crossing as a highway and not for the benefit of trespassers on the right of way. The O'Connor case, *supra;* Blanchard case, *supra*, and Illinois Central R. R. Co. v. Hetherington, 83 Ill. 510.

The rear brakeman was warranted in believing that the deceased would not long remain where the brakeman saw him first, kneeling down by the rail of the passing track, and therefore was not guilty of willful or wanton negligence in failing to signal the conductor or engineer not to back up and couple the sections together until after the passenger train, which obstructed the view of the deceased from the brakeman, had gone past; but the brakeman very promptly did signal the engineer to stop as soon as the passenger train was past and he saw the peril the deceased was in, and the engineer soon thereafter succeeded in stopping his train.

As it appeared by the evidence that appellee's intestate was not exercising ordinary care for his own safety when killed by the train of appellant and that he was at the time a trespasser upon appellant's right of way, and that the servants of appellant in charge of said train were not guilty of any willful or wanton negligence which caused said train to kill him, the Circuit Court should have given the jury the peremptory instruction to find for the defendant as requested by its counsel, and committed reversible error by refusing it, for which we will reverse the judgment, with directions to the clerk to incorporate in the judgment of this court, "that Henry Hibsman was a trespasser upon the right of way of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, when he was killed by a car of one of its trains striking and running over him; that the servants of said railway company in charge of said train, were not, at the time, guilty of willful or wanton negligence in managing same; and that appellant is not guilty as charged in the declaration."

Reversed, with finding of facts.